UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEB HANA BANK, as trustee of LIME Chicago Office Professional Investor's Private Real Estate Fund 3,<br><br>                            Plaintiff,<br><br>          v.<br><br><br><br><br>MS WACKER MANAGER LLC; SL WACKER MANAGER LLC; 601W SOUTH WACKER PROPERTY MANAGER LLC; JOSEPH SKYDELL; MICHAEL SILBERBERG; and MARK KARASICK,<br><br>                         Defendants. | Case No. 1:25-cv-02059-PAE<br><br>**STIPULATION PROTOCOL FOR THE EXCHANGE OF ELECTRONICALLY-STORED INFORMATION** |

It is stipulated and agreed by Plaintiff KEB Hana Bank, as Trustee of LIME Chicago Office Professional Investor's Private Real Estate Fund 3 ("Plaintiff") and Defendant 601W South Wacker Property Manager LLC ("Defendant"), through their counsel (each singularly, Party; together, Parties), to comply with the procedures and obligations for the exchange and production of electronically stored information ("ESI") set forth below. The Parties agree:

1.     **Scope of ESI Protocol**

The Protocol is intended to supplement the applicable Federal Rules of Civil Procedure ("FRCP"), the Local Rules of United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), the Individual Rules and Practices in Civil Cases of the Hon. Paul A. Engelmayer, and any other applicable orders and rules, to govern the production of ESI and hard copy documents in this action. All disclosures and productions made pursuant to the following Protocol are subject to the Confidentiality Stipulation and Protective Order ("Confidentiality Stipulation") and any other Orders entered in this action.

1

**2.     ESI That Is Not Reasonably Accessible**

(a)     The Parties agree that there is no need to preserve or collect ESI from the following sources which are deemed not likely to contain relevant information and to be not reasonably accessible:

   (i)     Voice mails that are not automatically delivered to a custodian's e-mail address in either audio or transcribed form;

   (ii)     random access memory (RAM), temporary files, or other ephemeral data;

   (iii)     on-line access data such as temporary internet files, histories, caches, cookies, etc.;

   (iv)     deleted, slack, fragmented, or other data accessible only by forensics;

   (v)     data in metadata fields that are frequently updated automatically, such as last-opened dates, except as specified in this Agreement;

   (vi)     dynamic fields of databases or log files that are not retained in the usual course of business;

   (vii)     information from handsets, mobile devices, personal digital assistants, and tablets that is duplicative of information that resides in a reasonably accessible data source, and;

   (viii)   personal computers and personal e-mail not used in connection with any business activities.

(b)     Automatically Saved Versions of Documents.  The Parties agree to meet and confer with respect to documents that automatically save, in light of the burden of searching and producing prior versions of each document.  For the avoidance of doubt, this provision does not exempt from production any manually saved versions of such documents.

(c)     Nothing in this Stipulation and Order prevents any Party from asserting, in accordance with the FRCP, Local Rules, the Individual Rules and Practices in Civil Cases of the Hon. Paul A. Engelmayer, and any other applicable orders and rules, that other categories of Documents or ESI are not reasonably accessible.

**3.     Collection and Review**

(a)     Use of Search Terms and/or Predictive Coding: The parties agree to meet and confer as to any search terms that may be requested by either party to supplement a producing party's use of search terms and/or predictive coding to search, review, and produce ESI.

**4.      Format of Files for Production**

All ESI shall be produced in the following format.  Any proposed formats other than what is indicated below should not be produced without approval from the requesting party.

(a)      A Concordance delimited text data file ("DAT") which contains the field level formation identified in item (i).  The standard delimiters for this file are as follows:

| Comma | ASCII Character 20 |
|---|---|
| Quote | ASCII Character 254 |
| Newline | ASCII Character 174 |

(b)      Convert all ESI to black and white Group IV compression, single page Tagged Image File Format (.TIFF or .TIF) files.  The images must reflect how the document would appear had it been printed from its native application.

(c)      All images will be electronically branded with the unique identify number ("Bates Number") in a location that will not obstruct, conceal, or otherwise eliminate information from being viewed.

(d)      All images are to be named after the Bates Number assigned to that page.  File names cannot contain embedded spaces.  The number of files per folder should not exceed 1,000.  Images must be accompanied by an Opticon image cross reference file ("OPT").  Every page in the production set must have a line referenced in the OPT file.

(e)      All text extracted from the ESI must be provided in an associated text file named after the Bates Number of the first page in that document.  In the event that no extracted text exists (e.g., non-searchable files such as PDF documents) or a document is being produced in redacted form, Optical Character Recognition ("OCR") will be used.

(f)      All productions will be placed on an encrypted CD, DVD, thumb drive, or external hard drive (the "Production Media").  Productions may also be transferred by way of a secure File Transfer Protocol (FTP) site.  The producing party shall contemporaneously provide the encryption key under separate cover.

(g)      All productions of email must include attachment level Bates Numbering referenced in the data file ("BegAttach" and "EndAttach").  The email image will be the "parent" and the attachment(s) to that email with be the "child."  Emails can have more than one child, and in that event the ending bates number referenced will be the last bates number of the last attachment.

(h)    The following fields of data, to the extent available, must be included in the DAT file:

| Field Name | Description |
|---|---|
| Author | Author field value as extracted from the metadata of the original file |
| BCC | Recipient(s) of "Blind Carbon Copies" of the email message |
| BeginBates | Bates number of the first page of a document |
| BegAttach | Bates number of the first page of the parent document |
| CC | Recipient(s) of "Carbon Copies" of the email message |
| Custodian | Custodian of the file or archive from which the file was obtained |
| Date Created | Creation date of the original file |
| Date Last Modified | Date the original file was last modified |
| EndAttach | Bates number of the last page of the last document of the last attachment |
| EndBates | Bates number of the last page of a document |
| File Extension | File extension of the original file |
| Filename | Name of an electronic file as it appears on disk |
| From | Sender of an email |
| Native Link | Contains the relative directory path of a file used to hyperlink to the native version of the original file |
| OCR Path | Contains the relative directory path of the text file used to import the extracted or OCR text of the original file |
| Received Date | Date an email was received |
| Received Time | Time an email was received |
| Sent Date | Date an email was sent |
| Sent Time | Time an email was sent |
| Source Path | Original location of the file at time of preservation |
| Subject | The Subject of an email |
| Title | Title field value extracted from the metadata of the original file |

4

| To | Members of the To list in the email |
|---|---|
| MD5Hash | The MD5 Hash value or a digital signature |
| MSGID | The value or a digital signature of e-mail |

(i)     MS Excel spreadsheets and MS Access databases shall be produced in native format with an accompanying placeholder image, unless the document contains redacted information.  For native production, the metadata load file shall contain a link to the produced MS-Excel spreadsheets and MS-Access database via data values called "Native Link."  The Native Link values should contain the full directory path and file name of the MS-Excel spreadsheet and MS-Access database as contained in the Production Media.  Produced native audio files should be accompanied by a .TIFF placeholder and a metadata file containing the name of the MD5 hash value for each produced file.  IF the audio files are maintained in a non-standard format, they should be produced in a standard audio format, including but not limited to MP3 or WAV format.

(j)     Production of structured data contained in relational databases other than MS-Access should be achieved via a report or export of such data to MS-Excel spreadsheets that will be produced.

(k)     Each party shall reserve the right to request that specific documents or files be produced in color or in some other format appropriate to the original document.

(l)     To the extent any audio files are produced, such files will be produced in the native audio file format in which they were maintained in the ordinary course of business.

(m)     The parties shall produce structured data or other types of data not already contemplated in this stipulation in a reasonably usable format or meet and confer to determine a mutually agreeable format.

### 5.     Deduplication (Global)

The Parties will endeavor to deduplicate ESI.  Documents will be deduplicated as against the entire population for all custodians and deduplicated custodians.  The parties may also de-duplicate emails that are fully contained, both email and attachments, in more inclusive copies of the same email thread.  The Parties will retain all de-duplicated documents for the duration of the action or as agreed and may request production of de-duplicated documents for particular custodians by identifying the applicable Bates numbers in writing.

6.      **Clawback Mechanisms for Inadvertent ESI Disclosure**

The Parties agree that inadvertent disclosure of privileged or protected documents/information will not constitute a waiver of any such privilege or protection and will apply the following procedures:

(a)      Notice

Within ten (10) days from the date on which a disclosing Party discovers an inadvertent disclosure of ESI, it will notify the receiving Party by written Clawback Notice identifying the inadvertent disclosure(s) and directing the receiving Party to promptly return, destroy, and/or make inaccessible the inadvertently-disclosed information/documents and all copies, and provide an updated privilege log identifying the documents that are the subject of the Clawback Notice.

(b)      Parties' Obligations

Within three (3) days of receipt of the Notice, the receiving Party will inform the disclosing Party that compliance will be effectuated or challenge the Notice in a formal responsive writing. If the Notice is not challenged, the receiving Party will destroy, return, and/or disable all access to the specified documents/information within ten days or as agreed by the Parties.

(i)      Where the inadvertent disclosure is in the form of a disc or access to a password-protected server, the producing Party must replace, upon receipt of intent to comply with the Notice, a replacement of the production containing all documents/information but for those identified in the Notice.

(ii)      The receiving Party will endeavor in good faith to retrieve any copies of the identified documents/information to return, destroy, or otherwise dispose of the materials, and take all steps necessary to prevent further sharing of those materials. Within ten (10) days of receipt of the Clawback Notice, the receiving party shall confirm in writing to the producing party that it has taken all reasonable steps to prevent further sharing of the materials that are the subject of the Clawback Notice. The receiving Party will identify, in writing responsive to the Notice, the persons or entities that have received copies of the information/documents, identify the facts surrounding the sharing of those materials, and describe its best efforts to retrieve those materials in its affirmation of compliance.

(iii)      Any use of the identified inadvertent disclosures prior to receipt of the Notice is not a violation of this ESI Stipulation but may be subject to the provisions of the Confidentiality Stipulation.

(iv)     If the receiving Party challenges the Notice, it will return, destroy, or disable all copies of the documents/information, but may retain one copy for the purpose of challenging the designation of privilege/protection or inadvertency of the disclosure.

(v)     The Parties will meet and confer within two (2) days to resolve the dispute if the Notice is challenged, and, if not resolved, the disclosing Party will submit a letter to the Court pursuant to Section 2.C of the Individual Rules and Practices in Civil Cases of the Hon. Paul A. Engelmayer.

(vi)     Under all circumstances, the disclosing Party must preserve all documents/information subject to the Notice until any dispute has been resolved by the Parties' agreement or court order.

(c)     Receiving Party's Affirmative Obligation

A receiving Party that discovers privileged or protected documents/information will inform the disclosing Party in writing, but in any event no later than within five (5) days from discovery of the inadvertent disclosure, regardless whether a challenge to such privilege or protection is anticipated.

**7.     Confidentiality Designations and ESI From Other Individuals/Entities:**

The Parties will designate documents as confidential or otherwise according to the terms of the Confidentiality Stipulation.

This ESI Stipulation may be re-executed and/or modified by agreement of the Parties; for instance, to allow non-signatory parties to this action or nonparties producing ESI to join this agreement.

SO STIPULATED AND AGREED.

Dated: March 27, 2026

/s/ Jinhee Kim
_____
Jinhee Kim
Somin Jun
**Jipyong LLC**
26F, Grand Central A
14 Sejong-daero, Jung-gu
Seoul 04527, Republic of Korea
+82-2-6200-1782
jinheekim@jipyong.com
smjun@jipyong.com

7

Joseph M. DeFazio
**Troutman Pepper Locke LLP**
875 Third Avenue
New York, New York 10022
(212) 704-6162
joseph.defazio@troutman.com

*Counsel to Plaintiff*

Dated: March 27, 2026

/s/ John C. Leddy
_____

Christopher J. Sullivan
John C. Leddy
**Nutter McClennen & Fish LLP**
655 Third Avenue
New York, NY 10017
(646) 440-8000
csullivan@nutter.com
jleddy@nutter.com

Chelsea M. Torres
**Nutter McClennen & Fish LLP**
155 Seaport Boulevard
Boston, Massachusetts 02210
(617) 439-2267
ctorres@nutter.com

*Counsel to Defendant*

GRANTED.
**SO ORDERED:**

_____
THE HONORABLE PAUL A. ENGELMAYER

Date:  March 27, 2026
New York, New York

8